1

2                                             **E-Filed 5/24/2010**

3

4

5

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

| | |
|---|---|
| TIMOTHY POWELL, | Case Number C 09-04928 JF (PVT) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |
| v. | [re: doc. nos. 21, 41, 42] |
| RESIDENTIAL MORTGAGE CAPITAL, NATIONAL HOME EQUITY, GENERAL MOTORS ACCEPTANCE CORPORATION, NOEL McCORD, FIRST NET MORTGAGE, and DOES 1-100, inclusive, | |
| Defendants. | |

## I. BACKGROUND

### A. Factual Background

This action arises out of a residential mortgage transaction.  Plaintiff Timothy Powell alleges that on October 23, 2006 he obtained financing from Residential Mortgage Capital ("Residential") and PNC Bank, National Association ("PNC"), sued as National Home Equity, for the purpose of purchasing the subject property located at 811 Larkin Valley Road, Watsonville, CA ("the Property").  Complaint ¶¶ 21, 22.  Plaintiff alleges that Residential and PNC were the loan originators and that Defendant GMAC Mortgage, LLC ("GMAC"),

1   erroneously sued as General Motors Acceptance Corporation, is the current servicing company of

2   the loan.  *Id.* ¶ 23.  It appears that Plaintiff did obtain a loan in the principal amount of

3   $924,000.00 funded by Residential ("primary loan"), but that PNC's predecessor, National City

4   Bank, issued Plaintiff a home equity line of credit ("HELOC") with a maximum principal

5   obligation limit of $115,000.00.  PNC's Request for Judicial Notice ("RJN"), Exs. A ("Deed of

6   Trust") (identifying Plaintiff and Avelia Powell, husband and wife, as joint tenants and the

7   borrowers, and Residential as the lender, as well as the amount owed as $924,000.00); B ("Deed

8   of Trust") (identifying Plaintiff and Avelia Powell, husband and wife, as the trustor and National

9   City Bank as the Trustee and Lender, a well as the maximum obligation limit as $115,000.00).[1]

10      Plaintiff alleges that Defendants stated an inflated income on his loan application,

11  Complaint ¶¶ 24-26, "rushed [him] through signing the [loan] documents and..."[a]ny and all

12  documents Plaintiff received also failed to include initial disclosure and final disclosures,

13  includ[ing] [RESPA] disclosures.  *Id.* ¶ 28.  Plaintiff also claims that Residential and PNC

14  violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., by not disclosing that a

15  mortgage would be placed on the property, and that they made the loan based upon his collateral

16  rather than his ability to repay the loan.  *Id.* ¶¶ 39-40.  Plaintiff does not differentiate between the

17  primary loan and HELOC in his complaint.  While it is not clear which obligation is the subject

18  of which of Plaintiff's allegations, it appears that the allegations relate to the Primary Loan rather

19  than the HELOC, as Plaintiff asserts that "the terms of the loan were memorialized in a

20  Promissory Note, which was secured by a Deed of Trust on the Property, the Deed of Trust

21  identified First American Title Company as Trustee, and Defendant Residential Mortgage Capital

22  as the Lender." *Id.* ¶ 28.  Finally, Plaintiff alleges that the property is "now in the foreclosure

23

24  _____

25      [1] PNC requests that the Court take judicial notice of four documents: the Deed of Trust
    on the primary loan, Ex. A; the deed of trust pertaining to the HELOC, Ex. B; the Notice of

26  Default pertaining to the primary loan, Ex. C; and the Notice of Sale pertaining to the primary
    loan, Ex. D.  Plaintiff does not oppose PNC's request.  All four documents were recorded as

27  official records by the Santa Cruz County Recorder's Office.  Accordingly, the Court will take
    judicial notice of the documents pursuant to Fed. R. Evid. 201(b).

28

1  process." *Id.* ¶ 30.  Again Plaintiff does not identify which obligation is in the foreclosure

2  process.  However, PNC has submitted a copy of the notice of default and election to sell

3  recorded on May 28, 2009, and these documents pertain to the primary loan.  RJN, Ex. C (Notice

4  of Default and Election to Sell) (indicating that Plaintiff was in default on the primary loan in an

5  amount of $14,774.74.  A Notice of Sale regarding the primary loan was recorded on August 28,

6  2009.  RJN, Ex. D (Notice of Sale).

7      **A. Procedural Background**

8      Plaintiff filed his complaint on October 16, 2009 against Defendants GMAC, PNC,

9  Residential Mortgage Capital,[2] Noel McCord, First Net Mortgage, and Does 1-100, alleging the

10  following claims for relief:  (1) violation of TILA and the Home Ownership and Equity

11  Protection Act ("HOEPA");[3] (2) violation of the California Rosenthal Act, Cal. Civ. Code § 1788

12  et seq.; (3) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605

13  et seq.; (4) fraud; (5) breach of fiduciary duty; (6) breach of contract; (7) breach of the covenant

14  of good faith and fair dealing; (8) violation of California Financial Code § 4970 et seq.; (9)

15  violation of California Business and Professions Code § 17200 et seq.; (10) negligence; (11)

16  usury; and (12) accounting.  Plaintiff also filed an application for a temporary restraining order

17  ("TRO") and order to show cause re preliminary injunction.  On October 27, 2009, the Court

18  approved a stipulation submitted by Plaintiff and GMAC taking the TRO application off calendar

19  and postponing a foreclosure sale scheduled to occur on October 29, 2009.

20      Now before the Court are two separate motions to dismiss Plaintiff's complaint, one filed

21  by GMAC, and the second filed by PNC.  PNC also moves to strike particular paragraphs of the

22  complaint requesting punitive damages and attorney's fees, as well as for a more definite

23

24      [2] Plaintiff voluntarily dismissed the instant action without prejudice as to Defendant
25  Residential Mortgage Capital.

26      [3] Plaintiff appears to allege two separate claims for relief under TILA – one based
   primarily upon a failure to make certain material disclosures and the other premised upon
27  Defendants' alleged failure to deliver notices of Plaintiff's right to cancel and "placing terms
   prohibited by TILA into the transaction." Complaint ¶ 52.
28

3

1  statement.  Plaintiff opposes GMAC's motion to dismiss, but he did not file opposition to PNC's

2  motions.

3  **II. LEGAL STANDARD**

4  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

5  cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

6  *Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir.2008).  For purposes of a motion

7  to dismiss, "all allegations of material fact are taken as true and construed in the light most

8  favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th

9  Cir.1996).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does

10  not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle

11  [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

12  elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,

13  127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).  Leave to amend must be

14  granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas*

15  *v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir.1995).

16  **III. DISCUSSION**

17  **A. GMAC's motion to dismiss**

18  GMAC contends that all of Plaintiff's claims for relief are insufficient because Plaintiff

19  does not distinguish between the actions of GMAC, the current servicer, and the other defendants

20  named in the instant action.  The complaint in some instances refers to Residential and PNC and

21  in others to "Defendants" generally, but refers specifically to GMAC only on two occasions: (1)

22  "Plaintiff is informed and believes that Defendants Residential Mortgage Capital, National Home

23  Equity and [GMAC] are corporations doing business in Santa Cruz County, California and/or the

24  Trustee of that certain Deed of Trust listing Plaintiff as Borrower, which is the subject of this

25  Complaint", Complaint ¶ 8; and  (2) "GMAC is the current servicing company of said loan." *Id.*

26  ¶ 23.  Plaintiff makes no specific allegations of wrongdoing tied specifically to GMAC and in

27  many cases refers to "Defendants" generally when alleging facts related to the loan's origination,

28

4

1   of which GMAC could not have been a part.

2          Treating disparate parties identically without explanation, as Plaintiff does throughout the

3   complaint, deprives each individual defendant a fair and meaningful opportunity to defend itself.

4   *Twombly*, 550 U.S. at 553-55; *In re Sagent Technology, Inc., Derivative Litigation*, 278

5   F.Supp.2d 1079, 1094-95 (N.D. Cal. 2003) (holding that a "complaint that lumps together

6   thirteen 'individual defendants,' where only three of the individuals was alleged to have been

7   present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of

8   the claim to those defendants."). In his opposition papers, Plaintiff argues in conclusory fashion

9   that GMAC is "vicariously liable" for the actions of the loan originators. However, the

10  complaint makes no factual allegation, nor do Plaintiff's opposition papers cite any case law, in

11  support of this assertion. Plaintiff must plead facts sufficient to put GMAC on notice of the

12  claims asserted against it, and such facts must be specific enough to be more than speculation.

13  *Twombly*, 550 U.S. at 535-55; *Aschroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

14         The Court has grave reservations as to whether Plaintiff can state viable claims for relief

15  against GMAC. Among other things, Plaintiff has not alleged an ability to tender, many of

16  Plaintiff's claims appear to be time-barred, and Plaintiff asserts in his opposition papers only that

17  GMAC "might" own the loan. Opposition at 12-13. However, because the operative complaint

18  is Plaintiff's first pleading and in keeping with the strong policy in the Ninth Circuit favoring

19  amendment, leave to amend as to GMAC will be granted . *Lucas,* 66 F.3d at 248.

20         **B. PNC's motion to dismiss**

21              **1. TILA and HOEPA damages claim**

22         After reciting various terms of art found in TILA's statutory language, *see* Complaint ¶¶

23  33-37, Plaintiff alleges that Defendants violated the requirements of HOEPA and Regulation Z

24  by failing to disclose a notice mandated by Regulation Z, 12 C.F.R. § 226.32(c)(1), *Id.* ¶ 39; and

25  "extending credit based on Plaintiff's collateral rather than considering Plaintiff's current and

26  expected income, current obligations and employment status," *id.* ¶ 41. However, Plaintiff's

27  allegations fail to distinguish between PNC and the other named defendants, as well as

28

5

1   neglecting to identify the obligation to which the allegations refer – the primary loan or the

2   HELOC in which PNC's predecessor was involved.  These general and conclusory allegations

3   fail to meet even the liberal pleading standard of Rule 8.

4         Moreover, Plaintiff seeks money damages for which the applicable limitations period is

5   one year. See 15 U.S.C. § 1640(e).  The complaint alleges that the loan transaction at issue in this

6   action closed on October 23, 2006.  Complaint ¶ 28.  Plaintiff did not file his original complaint

7   until October 16, 2009, almost three years after the loan transaction was consummated. "A claim

8   under HOEPA is subject to TILA's one year statute of limitations." *Periguerra v. Meridas*

9   *Capital, Inc.,* 2010 WL 395932, at *6 (N.D. Cal. Feb. 1, 2010), citing *In re Comty. Bank of N.*

10  *Va.,* 418 F.3d 277, 304-305 (3rd Cir.2005) ("An affirmative action under HOEPA must be

11  brought within one year of the violation").  Plaintiff does not oppose the motion or allege facts

12  indicating when he discovered the alleged fraud or non-disclosures. *Santa Maria v. Pac Bell*,

13  202 F.3d 1170, 1178 (9th Cir. 2000) (holding that the statute of limitations may be tolled where

14  "a reasonable plaintiff would not have known of the existence of a possible claim within the

15  limitations period.").  Accordingly, Plaintiff's TILA damages claim appears to be time-barred.

16              **2. TILA rescission claim**

17        PNC argues that Plaintiff's claim for rescission is barred because the loan at issue was a

18  purchase money mortgage and such mortgages may not be rescinded under the statute.  PNC is

19  correct.  As another district court recently explained:

20              Residential mortgage transactions are expressly excluded from TILA's rescission
              provisions. See 15 US.C. § 1635(e)(1). A "residential mortgage transaction" is
21              defined by 15 U.S.C. § 1602(w) to include "a mortgage, deed of trust, . . . or
              equivalent consensual security interest . . . created . . . against the consumer's
22              dwelling to finance the acquisition . . . of such dwelling." Thus, while home
              equity loans and refinancing transactions could be amenable to rescission,
23              Plaintiff's purchase money mortgage for is not. (See Compl. at ¶ 14.) Plaintiff's
              TILA rescission claim is therefore dismissed.
24
    *Watts v. Decision One Mortg. Co.*, No. 09 CV 0043 JM (BLM), 2009 WL 1657424, at * 3 (S.D.
25
    Cal. June 11, 2009).  The complaint does not distinguish between the primary loan and HELOC
26
    loan.  In fact, Plaintiff does not acknowledge the existence of the HELOC in his complaint.
27
          Plaintiff also fails to allege ability to tender.  Although the Ninth Circuit has not
28
                                               6

addressed the issue directly, it has held that a court may require a borrower seeking rescission of a mortgage transaction under TILA to demonstrate the ability to tender the loan proceeds. *Yamamoto v. Bank of New York,* 329 F.3d 1167, 1168 (9th Cir. 2003) (holding that it is within a district court's "discretion to condition rescission on tender by the borrower of the property he had received from the lender") (internal quotation marks and citation omitted).

District courts within the circuit are split.  A number of them have extended *Yamamoto* to hold that a claim for rescission under TILA is subject to dismissal at the pleading stage if the borrower fails to allege a present ability to tender the loan proceeds.  *See, e.g., Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d 895, 901-905 (C.D. Cal. 2009); *Del Valle v. Mortg. Bank of California,* No. CV-F-09-1316 OWW/DLB, 2009 WL 3786061, at *8 (E.D. Cal. Nov. 10, 2009); *ING Bank v. Korn,* No. C09-124Z, 2009 WL 1455488, at *1 (W.D. Wash., May 22, 2009); *Garza v. American Home Mortg.,* No. CV F 08-1477 LJO GSA, 2009 WL 188604, at *5 (E.D. Cal. Jan. 27, 2009) (granting motion to dismiss TILA rescission claim in light of complaint's failure to allege ability to tender, since "[r]escission is an empty remedy without [plaintiff]'s ability to pay back what she has received").  However, other courts have held that failure to allege ability to tender is not fatal to a TILA rescission claim.  *See, e.g., Singh v. Washington Mut. Bank,* No. C-09-2771 MMC, 2009 WL 2588885, at *4 (N.D. Cal. Aug. 19, 2009) ("Notably, *Yamamoto* does not hold that a claim for rescission cannot survive a motion to dismiss until the right to rescind is adjudicated in the plaintiff's favor."); *ING Bank v. Ahn,* No. C 09-995 TEH, 2009 WL 2083965, at *2 (N.D. Cal. July 13, 2009) (noting that "Yamamoto did not hold that a district court must, as a matter of law, dismiss a case if the ability to tender is not pleaded.  Rather, all of these cases indicate that it is within the trial court's discretion to choose to dismiss where the court concludes that the party seeking rescission is incapable of performance."); *Pelayo v. Home Capital Funding,* No. 08-CV-2030 IEG (POR), 2009 WL 1459419, at *7 (S.D. Cal. May 22, 2009) (rejecting argument that, under Yamamoto, claim for rescission was subject to dismissal where plaintiff "failed to offer tender in the complaint of the funds she borrowed"); *Harrington v. Home Capital Funding, Inc.*, No. 08cv1579 BTM (RBB),

7

1   2009 WL 514254, at *3 (S.D. Cal. Mar. 2, 2009) (holding "[t]ender by the borrower is not always

2   a precondition to rescission and does not have to be pled to state a claim for rescission");

3   *Burrows v. Orchid Island TRS, LLC,* No. 07CV1567-BEN (WMC), 2008 WL 744735, at *6

4   (C.D. Cal. Mar.18, 2008) (rejecting, on motion to dismiss, defendant's argument that "there [was]

5   no evidence" that plaintiff could return loan proceeds).

6          This Court finds the second line of cases more persuasive in that they appear to be more

7   consistent with the liberal pleading standard of Fed. R. Civ. P. 8.  However, the Court agrees

8   with the reasoning of the first line of cases that "it was not the intent of Congress to reduce the

9   mortgage company to an unsecured creditor," *Del Valle*, 2009 WL at *8, and that "[r]escission is

10  an empty remedy without [plaintiff]'s ability to pay back what she has received," *Garza*, 2009

11  WL at *5.  Accordingly, the Court will exercise the discretion conferred upon it by Yamamoto to

12  require that Plaintiff allege either the present ability to tender the loan proceeds or the

13  expectation that he will be able to tender within a reasonable time.[4]  At the end of the day,

14  Plaintiff "will not be entitled to rescission" unless he can tender the principal balance of the loan.

15  *See Clemens v. J.P. Morgan Chase Nat. Corporate Services*, Inc., No. 09-3365 EMC, 2009 WL

16  4507742, at *5 (N.D. Cal. Dec. 1, 2009).  It makes little sense to let the instant rescission claim

17  proceed absent some indication that the claim will not simply be dismissed at the summary

18  judgment stage after needless depletion of the parties' and the Court's resources.

19          **3. California Rosenthal Fair Debt Collection Practices Act ("RFDCPA")**

20          The purpose of the RFDCPA is "to prohibit debt collectors from engaging in unfair or

21  deceptive practices in the collection of consumer debts and to require debtors to act fairly in

22  entering into and honoring such debts." Cal. Civ.Code, § 1788.1(b). The RFDCPA defines "debt

23  collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself

24  or herself or others, engages in debt collection." Cal. Civ. Code, § 1788.2(c).

25  _____

26          [4]  For example, a TILA plaintiff might be able to allege that while he lacks the liquidity to
    tender the loan proceeds at the time he files the rescission claim, he has sufficient equity in the
27  home and a willingness to sell that would render it likely that he could tender the loan proceeds if
    given a reasonable period of time.
28

8

Plaintiff's conclusory allegations regarding PNC's violation of the RFDCPA are limited to the following:  (1) PNC is a "debt collector[] within the meaning of the Rosenthal Act in that [it] regularly, in the course of [its] business, on behalf of [itself] or others, engage in the collection of debt, Complaint ¶ 56; and (2) Defendants' actions constitute a violation of the Rosenthal Act in that they threatened to take actions not permitted by law, including but not limited to the following: making false reports to credit reporting agencies, foreclosing upon a void security interest, falsely stating the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect a debt.  *Id.* ¶ 57.  These allegations again fail to specify whether the conduct alleged pertains to the primary loan or HELOC.  However, as discussed above, it appears that the allegations with respect to foreclosure apply to the primary loan.  RJN Exs. A, C, and D (the Notice of Default and Notice of Sale refer back to the Deed of Trust identifying the primary loan).  PNC's predecessor is identified as the lender and trustee on the Deed of Trust for the HELOC, not the primary loan.  RJN Ex. B (Deed of Trust).

Moreover, the Court need not accept Plaintiff's conclusory allegation that PNC is a debt collector under the Act. "[F]oreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Hulse v. Ocwen Federal Bank, FSB,* 195 F.Supp.2d 1188, 1204 (D.Or. 2002). As the fellow district court in *Hulse,* 195 F.Supp.2d at 1204, explained:

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.
> ... Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

Accordingly, Plaintiff fails to state a RFDCPA claim for relief against PNC.

### 4. RESPA claim

Plaintiff alleges that all named defendants violated RESPA by failing to provide him with an initial good faith estimate, final good faith estimate, notice of assignment, sale or transfer of

9

1    servicing rights, and escrow account disclosure.  Complaint ¶ 65.  Plaintiff also claims that all

2    named defendants violated RESPA by "providing a person with a fee, kickback or thing of value

3    pursuant to any agreement or understanding...involving a federally related mortgage loan" and

4    "providing a fee portion, split or percentage of any charge made or received for the rendering of a

5    real estate settlement service in connection with a transaction involving a federally related

6    mortgage loan other than for services actually performed.  *Id.* ¶ 66.  He asserts that Defendants

7    required, as a condition to selling the property, that Plaintiff purchase title insurance covering the

8    property from a particular title company.  *Id.* ¶ 67.  He also alleges that all named Defendants

9    violated RESPA by failing and refusing to provide a proper written explanation or response to

10   Plaintiff's Qualified Written Requests.  Finally, Plaintiff alleges that "Defendants have engaged

11   in a pattern or practice of non-compliance with the requirements of the mortgage services

12   provisions of RESPA."  *Id.* ¶ 69.  As with his other claims, Plaintiff fails to identify which of the

13   Defendants is responsible for any of the alleged wrongdoing and to which loan the conduct

14   pertains.

15          At best, Plaintiff's allegations are threadbare recitals of RESPA's statutory prohibitions

16   without any mention of facts particular to Plaintiff's claim.  "While legal conclusions can provide

17   the complaint's framework, they must be supported by factual allegations."  *Iqbal*, 129 S.Ct.

18   1937, 1940 (2009).  For example, Plaintiff alleges that "Defendants" violated RESPA by failing

19   to respond to their QWR.  Complaint ¶ 68.  However, Plaintiff does not allege when he sent the

20   QWR, or its contents, or the method by which it was sent.

21                      **5. Fraud**

22          Although his fraud claim arises under state law, Plaintiff's allegations are subject to the

23   pleading requirements of the Federal Rules.  Accordingly, the claim is subject to the heightened

24   pleading requirements of Fed. R. Civ. P. 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

25   1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be 'grounded in fraud' or to 'sound in

26   fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of

27   Rule 9(b)."); *Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir.1994) (claims based in fraud "must

28

                                    10

1  state precisely the time, place, and nature of the misleading statements, misrepresentations, and

2  specific acts of fraud.").

3          Plaintiff alleges that "Defendants" knowingly entered an inflated income into Plaintiff's

4  loan documents without disclosing the change to him and with the intention of defrauding him.

5  Complaint ¶¶ 76-80.  The fraud claim fails for many of the same reasons as Plaintiff's federal

6  claims – Plaintiff does not specify which, if any, of the Defendants engaged in the alleged

7  conduct or to which obligation the wrongdoing relates.  Plaintiff does not come close to meeting

8  Rule 9's heightened pleading standard, as he does not identify the "who" or "what" that are the

9  subject of his claim.

10                    **6. Breach of Fiduciary Duty**

11         Plaintiff alleges that PNC "owed a fiduciary to the Plaintiff to act primarily for his

12  benefit, to act with proper skill and diligence, and not to make a personal profit from the agency

13  at the expense of [its] principal, the Plaintiff."  Complaint ¶ 86.  However, it is well established

14  that a "lender owes no duty of care to a borrower when the institution's involvement in the

15  transaction does not exceed the scope of its conventional role as a mere lender of money."

16  *Benham v. American Servicing Co.,* No. C 09-01099 JSW, 2009 WL 4456386, at *3 (N.D. Cal.

17  Nov. 30, 2009), citing *Nymark,* 231 Cal.App.3d at 1095-96, 283 Cal.Rptr. 53; *Oaks Management

18  Corp. v. Superior Court,* 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006); *Union Bank v.

19  Superior Court,* 31 Cal.App.4th 573, 579 n. 2, 37 Cal.Rptr.2d 653 (1995); *Kim v. Sumitomo

20  Bank*, 17 Cal.App.4th 974, 979, 21 Cal.Rptr.2d 834 (1993).

21                      **7. Breach of Contract**

22         To state a claim for breach of contract under California law, a plaintiff must allege (1) the

23  existence of a contract; (2) plaintiff's performance or excuse for nonperformance of the contract;

24  (3) defendant's breach of the contract; and (4) resulting damages. *Armstrong Petroleum Corp. v.

25  Tri-Valley Oil & Gas Co.,* 116 Cal.App.4th 1375, 1390, 11 Cal.Rptr.3d 412 (2004).  Plaintiff

26  alleges that he "entered into an agreement with Defendants, whereby Defendants promised to

27  provide Plaintiff with an affordable loan."  Complaint ¶ 92.  As another district court addressing

28

Case Number C 09-04928 JF (PVT)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
(JFLC1)

1   nearly identical allegations recently explained. "[t]his supposed promise to provide an 'affordable

2   loan' is vague, and do[e]s not allege where such a promise is memorialized or what consideration

3   was given for such a promise.  Such a vagues promise is not sufficient to show the existence of a

4   contract." *Blanco v. American Home Mortg. Servicing, Inc.*, No. CIV. 2:09-578 WBS DAD,

5   2009 WL 4674904, at *7 (E.D. Cal. Dec. 4, 2009); *see also See Hardy v. Indymac Federal Bank,*

6   263 F.R.D. 586, 591 (E.D. Cal. 2009).

7           Plaintiff then claims that Defendants breached the alleged agreement by "failing to

8   exercise reasonable efforts and due diligence as promised, thus failing to provide Plaintiff with

9   an affordable loan," "committing wrongful acts, including but not limited to, intentionally or

10  negligently failing to obtain payment and interest rates as promised, failing to submit an accurate

11  loan application, failing to supervise, failing to provide loan documents for Plaintiff's review

12  prior to closing...failing to explain the loan documents," and "failing to offer Plaintiff a loan

13  modification." *Id.* ¶ 94.  Plaintiff alleges no facts supporting the existence of a contract requiring

14  PNC to perform any of the purported obligations.  *Iqbal,* 129 S.Ct. at 1949.  "Without alleging

15  facts that make the existence of a contract to provide an affordable loan plausible, plaintiff

16  cannot state a claim for breach of contract." *Blanco,* 2009 WL 4674904 at *7, citing *Hardy,* 263

17  F.R.D. at  591.  Finally, even if Plaintiff had alleged the existence of a contract, he again fails to

18  specify with which Defendant he contracted and to which obligation the agreement pertains.

19  Moreover, as argued by PNC, the allegations appear to relate to the actions of a mortgage broker,

20  not a lender such as PNC's predecessor in interest.

21                          **8. Breach of Covenant of Good Faith and Fair Dealing**

22          "The prerequisite for any action for breach of the implied covenant of good faith and fair

23  dealing is the existence of a contractual relationship between the parties, since the covenant is an

24  implied term in the contract." *Smith v. City and County of San Francisco,* 225 Cal.App.3d 38,

25  49, 275 Cal.Rptr. 17 (1990). The "implied covenant of good faith and fair dealing is limited to

26  assuring compliance with the express terms of the contract, and cannot be extended to create

27  obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena,* 114

28

                                              12

1   Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted.) "Without a

2   contractual relationship, [a plaintiff] cannot state a cause of action for breach of the implied

3   covenant." *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.  As discussed above, Plaintiff has

4   failed to plead the existence of a contract between himself and PNC.  *See supra,* III.B.7.

5               **9. Predatory Lending pursuant to California Financial Code § 4970 et seq.**

6          Beyond generally incorporating by reference paragraphs one through thirty of his

7   complaint, Plaintiff's sole allegation regarding PNC's violation of Section 4970 is that PNC's

8   "conduct...was in violation of California's predatory lending laws, as set forth in Financial Code

9   § 4970 et seq."  Complaint ¶ 106.  Plaintiff then alleges that this conduct was malicious,

10  fraudulent, oppressive, and with reckless disregard, and that Plaintiff is entitled to special,

11  general, and punitive damages, and attorney's fees and costs.  *Id.* ¶¶ 107-109.  Plaintiff alleges no

12  specific facts nor does he identify which predatory lending laws were violated or in what way.

13  Plaintiff does not even allege that his loan is covered by California's predatory lending laws.  *See*

14  *Fimbres v. Chapel Mortg. Corp.,* No. 09-CV-0886-IEG (POR), 2009 WL 4163332, at *7 (S.D.

15  Cal. Nov. 20, 2009) (dismissing plaintiffs' predatory lending claim which contained nearly

16  identical allegations), citing Cal. Fin. Code § 4970(b) (2009) (defining "covered loan").

17              **10. California Business and Professions Code § 17200 et seq.**

18         The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair,

19  deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.  Accordingly,

20  "[a]n act can be alleged to violate any or all of the three prongs of the UCL-unlawful, unfair, or

21  fraudulent." *Berryman v. Merit Prop. Mgmt.*, Inc., 152 Cal.App.4th 1544, 1554, 62 Cal.Rptr.3d

22  177 (2007).  Plaintiff  alleges that PNC's "acts, as alleged herein, constitute unlawful, unfair,

23  and/or fraudulent business practices, as defined in the California Business and Professions Code

24  § 17200 et seq."  Complaint ¶ 111.

25         These allegations are purely conclusory and fail to state a claim.  Plaintiff's allegations of

26  "unlawful" business acts or practices do not "borrow" violations of other laws.  To the extent that

27  Plaintiff premises his UCL claim on his TILA, HOEPA, or RESPA claims, it is insufficient for

28

                                             13

1  the reasons already discussed.  Plaintiff also fails to allege any acts by PNC in particular that

2  constitute either "unfair" or "fraudulent" business acts or practices.

3       **11.  Negligence**

4       A claim for negligence requires the existence of a legal duty to exercise reasonable care.

5  *See, e.g., Mendoza v. City of Los Angeles,* 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998)

6  (identifying the elements as "(1) a legal duty to use reasonable care, (2) breach of that duty, and

7  (3) proximate cause between the breach and (4) the plaintiff's injury"); *Nymark v. Heart Federal*

8  *Savings & Loan Ass'n,* 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991) ("The existence of a

9  duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for

10 negligence."); *see also Shopoff & Cavallo LLP v. Hyon,* 167 Cal.App.4th 1489, 1509, 85

11 Cal.Rptr.3d 268 (2008) (holding that a plaintiff must demonstrate the existence of a fiduciary

12 relationship, breach of that duty, causation, and damages).  The "question of the existence of a

13 legal duty of care ... presents a question of law which is to be determined by the courts alone."

14 *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler,* 210 F.3d 983, 986 (9th Cir. 2000).

15      Plaintiff alleges that PNC "owed a duty of care to Plaintiff," which was breached when

16 "Defendants...used their knowledge and skill to direct Plaintiff into a loan for which Plaintiff was

17 not qualified based on his income as stated to Defendants" and "direct[ed] him into a loan that he

18 may not have otherwise qualified for by industry standards, resulting in excessive fees paid by

19 Plaintiff and payments in excess of Plaintiff's ability to pay."  Complaint ¶¶ 115-117.  Again

20 Plaintiff fails to allege which obligation is the subject of these allegations - the primary loan or

21 the HELOC.

22      Moreover, Plaintiff's negligence claim, like his others, consists of little more than a

23 "formulaic recitation" of the elements of a claim for negligence.  *See Twombly,* 550 U.S. at 555,

24 127 S.Ct. 1955.  First, Plaintiff's conclusory assertion that PNC "owed a duty of care" is

25 insufficient; the Court need not accept Plaintiffs' legal conclusions as true.  *See Iqbal,* 129 S.Ct.

26 at 1949.  Plaintiff does not allege that he had anything more than a borrower-lender relationship

27 with the PNC.  As discussed above, *see supra* III.B.6, "as a general rule, a financial institution

28

14

1   owes no duty of care to a borrower when the institution's involvement in the loan transaction

2   does not exceed the scope of its conventional role as a mere lender of money." *Nymark,* 283

3   Cal.Rptr. at 57.  "Liability to a borrower for negligence arises only when the lender 'actively

4   participates' in the financed enterprise 'beyond the domain of the usual money lender.' " *Id.*

5   (citation and quotation marks omitted).  Finally, to the extent that Plaintiff's claim is based upon

6   the loan origination, the claim is barred by the two-year statute of limitations. See Cal. Code.

7   Civ. P. § 335.1 (two-year limitation on commencing actions other than for recovery of real

8   property).  Plaintiff entered into the HELOC loan agreement with PNC's predecessor in October

9   2006, but he did not file suit until October 2009, nearly three years later.

10          **12. Usury**

11          Plaintiff alleges that "the annual interest rate on the loan is usurious in violation of

12   section 1 of Article XV of the California Constitution.  Complaint ¶ 122.  He claims that the

13   interest rate on the loan violates the statutory maximum rate set in either Section 1(1) or 1(2).  *Id.*

14          Article XV, Section 1 of the California Constitution provides that: "No person,

15   association, copartnership or corporation shall by charging any fee, bonus, commission, discount

16   or other compensation receive from a borrower more than the interest authorized by this section

17   upon any loan or forbearance of any money, goods or things in action." Cal. Const. art. XV, § 1.

18   However, this provision contains many exemptions, including "any other class of persons

19   authorized by statute." *Id.*  "The essential elements of usury are: (1) the transaction must be a

20   loan or forbearance of the use of money; (2) the loan or forbearance must be made by a

21   non-exempt lender and in a nonexempt transaction; (3) the interest received by the lender must

22   be in excess of the statutory maximum rate that is applicable to the transaction; and (4) the lender

23   must have a willful intent to enter a usurious transaction." *Ghirardo v. Antonioli,* 8 Cal.4th 791,

24   798, 35 Cal.Rptr.2d 418, 883 P.2d 960 (1994).

25          Plaintiff does not allege sufficiently that the interest rate for the obligation exceeds the

26   statutory maximum rate; in fact, Plaintiff does not allege the interest rate of the primary loan or

27   the HELOC at all.  Second, Plaintiff does not allege that the loan was made by a non-exempt

28

15

1   lender in a non-exempt transaction.

2                   **13. Accounting**

3        Plaintiff alleges that "[t]he amount of money due, if any, from Plaintiff to Defendants is

4   unknown to Plaintiff and cannot be determined without an accounting."  Complaint ¶ 129. "A

5   cause of action for an accounting requires a showing that a relationship exists between the

6   plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that

7   can only be ascertained by an accounting." *Teselle v. McLoughlin,* 173 Cal.App.4th 156, 92

8   Cal.Rptr.3d 696, 715 (Ct. App. 2009).  Here, while Plaintiff does not allege clearly whether he

9   owes an amount past due on the primary loan, the HELOC, or both, one thing that is clear is that

10  PNC does not owe *Plaintiff* any money.  Failure to plead "some balance is due the plaintiff" is

11  fatal to an accounting claim.  Moreover, "an accounting can be a cause of action when a

12  defendant has a fiduciary duty to a plaintiff which requires an accounting, and that some balance

13  is due to the plaintiff that can only be ascertained by an accounting." *Pantoja v. Countrywide

14  Home Loans, Inc.*, 640 F.Supp.2d 1177, 1191-92 (N.D. Cal. 2009).  Here, the balance due can be

15  ascertained by looking to the Notice of Default on the primary loan, which clearly informed

16  Plaintiff as to the amount necessary to stop the foreclosure process. RJN, Ex. C (Notice of

17  Default).

18                          **IV. ORDER**

19       Good cause therefor appearing, the motions to dismiss the complaint are GRANTED.

20  Because the complaint is Plaintiff's first pleading that has been reviewed by the Court, and

21  because Plaintiff submitted opposition to GMAC's motion to dismiss, leave to amend will be

22  granted as to GMAC.  Because Plaintiff did not oppose PNC's motion and fails to offer any

23  credible explanation for not doing so, leave to amend is denied as to PNC.[5]  Any amended

24  complaint shall be filed within thirty (30) days of the date this order is filed.

25

26  ────────────

27       [5]  Because it will grant PNC's motion to dismiss without leave, the Court need not
    address PNC's motion to strike and alternative motion for a more definite statement.

28

                                16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS SO ORDERED.**

DATED: May 24, 2010



_____
JEREMY FOGEL
United States District Judge

17